IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRYAN B.,[1]

        Plaintiff,

      v.

COMMISSIONER,
Social Security Administration,

        Defendant.



Civ. No. 6:18-cv-00254-MK

OPINION AND ORDER

KASUBHAI, Magistrate Judge:

      Bryan B. ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)

seeking judicial review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the

Social Security Act ("Act"). All parties have consented to allow a Magistrate Judge to enter final

orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C § 636(c).

For the reasons that follow, the Commissioner's decision is REVERSED and REMANDED to

the ALJ for the calculation and award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the
last name of the non-governmental party in this case.

## PROCEDURAL BACKGROUND

On February 26, 2014 Plaintiff filed an application for DIB alleging disability as of May 13, 2013. Tr. 147-48.[2] The Commissioner denied Plaintiff's application initially, and upon reconsideration, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 92-101. Plaintiff and a vocational expert ("VE") testified at the hearing held on December 13, 2016. Tr. 34-55. On January 26, 2017, the ALJ issued a decision finding Plaintiff was not disabled. Tr. 13-33. On December 6, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6, 145-46. Plaintiff timely filed this complaint for review of the Commissioner's final decision. ECF No. 1.

Plaintiff was born on February 19, 1978. Tr. 27. He has a bachelor's degree in chemistry and past relevant work experience as a quality control technician, chemist, and prep cook. Tr. 26, 40. He was thirty-five (35) years old at the time of the alleged onset date of his disability. Tr. 27. He alleged disability due to major depression, post-traumatic stress disorder ("PTSD"), anxiety, autism, and spinal arthritis. Tr. 57.

## STANDARD OF REVIEW

This Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations

---

[2] "Tr." Refers to the Transcript of Social Security Administrative record provided by the Commissioner.

omitted). This Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [this Court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

### *Disability Analysis*

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). The five-step sequential inquiry is summarized below, as described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One: The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under step two. 20 C.F.R. § 404.1520(b).

Step Two: The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under step three. 20 C.F.R. § 404.1520(c).

Step Three: Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or

equal an impairment in the listings, the Commissioner's evaluation of the claimant's case proceeds under step four. 20 C.F.R. § 404.1520(d).

Step Four: The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(e), 404.1520(f).

Step Five: The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to perform, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. § 404.1520(g).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. If the claimant satisfies her burden with respect to the first four steps, the burden then shifts to the Commissioner regarding step five. 20 C.F.R. § 404.1520(g). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

\\

\\

### *The ALJ's Findings*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2018 and had not engaged in substantial gainful activity since May 13, 2013, the alleged onset date. Tr. 18.

At step two, the ALJ found that Plaintiff had the following severe impairments: PTSD, autism, major depressive disorder, anxiety disorder, lumbar and cervical degenerative disc disease, peripheral neuropathy, and fibromyalgia. *Id.*

At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19.

Prior to step four, the ALJ determined Plaintiff's RFC allowed him to:

> perform light exertion work with lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently, standing and/or walking six hours of an eight-hour workday and sitting six hours of an eight-hour workday. He can understand, remember, and carry out simple routine tasks with simple work related decisions. He can respond appropriately to coworkers, supervisors, and the public occasionally. Time off task would be accommodated by normal breaks and absences would be one day a month or less.

Tr. 21.

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a quality control technician (skilled work performed at very heavy), chemist (skilled work performed at very heavy), or prep cook (unskilled work, but performed at very heavy) given his RFC. Tr. 26.

At step five, the ALJ concluded that based upon the VE's testimony and considering the Plaintiff's age, education, work experience, and RFC, Plaintiff would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

Tr. 27. Specifically, the ALJ found Plaintiff could perform work as a small products assembler, electronic worker, or electrical accessory assembler. Tr. 27-28. Therefore, the ALJ found Plaintiff was not disabled from May 13, 2013 through the date of the decision. Tr. 28.

## DISCUSSION

Plaintiff argues that the ALJ erred by improperly rejecting: (1) Plaintiff's testimony; (2) medical opinions;[3] and (3) lay witness statements from Plaintiff's girlfriend.

### 1. Plaintiff's Testimony

Plaintiff argues that the ALJ failed to identify a specific, clear, and convincing basis for rejecting his subjective symptom testimony.

A. Analytical Framework

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

---

[3] Plaintiff's fourth claim alleging the ALJ improperly rejected a nurse practitioner's opinion has been included in the medical opinion issue for this Court's review.

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; [the ALJ] must state which pain testimony is not credible and what evidence suggests the complaints are not credible*." Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2.

The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and

other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See Id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

B.  Analysis

1)  Pain Symptoms

Plaintiff testified that beginning in May 2013 his "physical symptoms were too much for [him] to be able to do [his] job effectively" and that a neurologist decided Plaintiff should leave his employment. Tr. 42. Plaintiff claimed his physical symptoms included electric shock and pain sensations throughout his body and feelings of heart attacks due to the onset of fibromyalgia (after a 2012 assault by police officers resulting in multiple emergency trips to the hospital). Tr. 42-44. Although the electric shock sensations have ceased, Plaintiff testified that he has chronic pain. Tr. 45.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 23. The ALJ noted that Plaintiff's neurologist did not recommend Plaintiff should leave work. *Id.* Additionally, the ALJ found that Plaintiff's claims of disabling pain were

inconsistent with his limited and conservative treatment and that Plaintiff's failure to follow recommended treatment suggested that his pain symptoms were not as severe as he alleged. Tr. 25.

In dismissing Plaintiff's pain symptoms, the ALJ relied on a neurologist's reluctance to complete a long-term Social Security disability form to conclude that a neurologist did not recommend Plaintiff leave work. Tr. 23, 326. The neurologist in question explained that he was unwilling to complete a long-term disability form without further consultation or a completed functional capacity evaluation. Tr. 326. In relying on this record, the ALJ ignored the purpose and context of Plaintiff's office visit. The record indicates Plaintiff visited the neurologist's office on numerous occasions seeking pain management. *E.g.*, Tr. 324, 332. Plaintiff's pain symptoms were never directly dismissed by the neurologist. Tr. 326. In fact, the neurologist provided Plaintiff a prescription for pain medication in the record cited by the ALJ. *Id.* While the record does not indicate that a neurologist decided Plaintiff should leave work, the ALJ failed to address noted pain symptoms in the record. Tr. 324-41.

Plaintiff argues the treatment records cited by the ALJ are from six months after the Plaintiff ceased working and that Dr. Pettee, Plaintiff's neurologist, found the Plaintiff to be temporarily disabled. Even though Dr. Pettee was willing to find the Plaintiff temporarily disabled, Tr. 285, his definition of temporary disability was not necessarily consistent with the Social Security Administration's definition of disabled. Further, Dr. Pettee noted his determination was not based on a complete work-up, *id.*, and accordingly the work-up results and Dr. Pettee's subsequent opinion are given little weight. *See infra* Section 2.A(4). Therefore, the ALJ was correct to find that the neurologist in question did not explicitly direct Plaintiff to leave work, but the ALJ failed to explain why the pain symptoms in the record were discredited.

Next, the ALJ relied on Plaintiff's lack of follow-up treatment and specific overall findings in determining that Plaintiff's pain symptoms were not as significant as he alleged. Tr. 25. The ALJ cited several medical records from 2013 discussing Plaintiff's recommended pain treatment plans, Tr. 25, 288, 316-19, 328-31, 337-41, and Plaintiff's noncompliance with said programs, Tr. 326. The ALJ noted that one of Plaintiff's neurologists found him "essentially noncompliant with [] treatment program[s]", by failing to follow recommendations for physical therapy, massage, or trigger point injections, Tr. 25, 326. Although the ALJ also noted several instances where Plaintiff completed physical therapy for cervical spine pain, Tr. 369-71, 447-51, the ALJ determined the attempts at finding relief were insufficient for the significance of Plaintiff's claimed symptoms and resulting limitations, Tr. 25.

Plaintiff argues that rejecting his pain symptom testimony because of a failure to follow recommended treatment and a lack of specific overall findings demonstrates a fundamental misunderstanding of fibromyalgia. Evidence must be construed in light of the unique symptoms and testing related to fibromyalgia. *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). Fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Plaintiff points to treatment by Dr. Hinz, Plaintiff's rheumatologist, as evidence of specific findings, *see, e.g.*, Tr. 574-77, 579-81, but fails to explain why Plaintiff was "essentially noncompliant" with treatment programs, Tr. 326. Failing to seek treatment is powerful evidence of the severity of a plaintiff's credibility and pain. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Thus, even construing the evidence in light of fibromyalgia's unique symptoms, the record provides a clear and convincing reason for rejecting the severity of Plaintiff's pain testimony and affirming the ALJ's conclusion supported by substantial evidence because the Plaintiff failed to follow recommended

treatment.

2) Mental Impairments

Plaintiff testified that his mental impairments also prevented him from working. Plaintiff claimed to have anxiety and trouble with decision making leading to an inability to maintain employment as well as a significant increase in paranoia and agitation in June 2014. Tr. 23. In his application for disability, Plaintiff noted prescribed medication for ADHD, anxiety, depression, and bipolar disorder. Tr. 166. Plaintiff also testified about heart attack like symptoms due to anxiety and PTSD. Tr. 44-45. As of the date of his disability hearing, Plaintiff claimed to still be affected by anxiety in the form of panic attacks and uncontrolled rage and sadness. Tr. 45-46.

In dismissing Plaintiff's mental impairment symptoms, the ALJ relied on Plaintiff's good response to medications and unneeded complete remission of symptoms. Tr. 23; *See, e.g.*, Tr. 412, 415, 417, 428. The ALJ noted that Plaintiff "generally reported good response to medications," and that although the most recent records indicated that Plaintiff's mood variability was not treated to remission, "with severe mental impairments, complete remission of symptoms [was] not necessary to be able to function on a sustained basis." Tr. 23. Specifically, the ALJ pointed to Plaintiff's success with medications such as Zyprexa and continued mood variability. *Id.*

Plaintiff claims his mental health symptoms waxed and waned and the ALJ cherry-picked evidence in the record to conclude the Plaintiff's mental health symptoms were essentially stable.

> Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). An ALJ must look to the patient's overall well-being and nature of symptoms because some improvement in symptoms does not necessarily affect the ability to function in a workplace. *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). When no physician opines, based on a full review of all relevant records, that a patient is capable of working, ALJs are cautioned against inferring any positive results from a treatment program impacts a patient's ability to work or RFC. *Id.* at 1017-18.

Here, the ALJ failed to consider the evidence as a whole. While the Plaintiff eventually experienced improvement, the ALJ did not address the fact that the Plaintiff experienced a "mental health episode of decompensation" in June 2014. Tr. 23, 406. Instead, the ALJ skipped to July 2014 after the Plaintiff's symptoms had improved and failed to explain how any improvement in symptoms effected the Plaintiff's ability to work. *See* Tr. 23. Therefore, in rejecting Plaintiff's subjective mental impairment testimony, the ALJ failed to consider the Plaintiff's overall well-being and incorrectly focused on periods of improved mental health symptoms.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence to discredit Plaintiff's subjective *pain* testimony, but erred by discrediting Plaintiff's mental impairment testimony.

**2. Medical and Other Source Opinion Evidence**

A. Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Commr., Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians:

treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at

1012. Generally, "a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a reviewing

physician's." *Holohan*, 246 F.3d at 1202. If a treating physician's opinion is supported by

medically acceptable techniques and is not inconsistent with other substantial evidence in the

record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R.

§ 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another

physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc.

Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the

opinion of another physician, the ALJ must provide "specific and legitimate reasons" for

discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining

physician than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.

2007). As is the case with the opinion of a treating physician, the ALJ must provide "clear and

convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v.

Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is

contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons"

for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a

nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and

those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179,

184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

\\

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Commr. of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042-43 (9th Cir. 1995). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*¸ 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

1) William Hinz, M.D.

Plaintiff argues the ALJ failed to give proper weight to the medical opinion of his treating rheumatologist, Dr. Hinz. Plaintiff further argues the ALJ failed to construe the medical record in light of fibromyalgia's unique symptoms and diagnostic testing and to specify a basis for rejecting Dr. Hinz's opinion that the Plaintiff's condition was severe enough to likely miss three to four workdays per month.

On November 10, 2016, Dr. Hinz completed a pre-printed form regarding Plaintiff's conditions. Tr. 574-77. Dr. Hinz indicated that Plaintiff complained of diffuse joint muscle pain, chronic fatigue with extreme sleep disruption, and persistent migraines. Tr. 575. He indicated that relevant clinical findings revealed pain to palpation of joints, muscle, and tender points, and that an October 2013 MRI of the cervical spine revealed posterior disc bulge at C4-C7. *Id*. Dr. Hinz opined that due to chronic pain and lack of strength, Plaintiff would fatigue easily, need frequent breaks during the day, and would miss three to four days of work per month. Tr. 576-77. While Dr. Hinz had examined the Plaintiff on at least five previous occasions beginning in 2015, *e.g.*, Tr. 499, 507, 511, 515, 519, there is no indication Dr. Hinz performed an examination of the Plaintiff on the date he completed the form, *see* Tr. 574-77.

The ALJ gave little weight to Dr. Hinz's opinion, finding the opinion conflicted with Dr. Hinz's examination findings and were not supported by the record. Tr. 25. Specifically, the ALJ noted that in December 2016 Dr. Hinz found Plaintiff had full muscle strength in all extremities. Tr. 25, 581. Indeed, exam records from August and December 2015, and February and June 2016 revealed 5/5 muscle strength in all extremities, although plaintiff consistently complained of muscle weakness. Tr. 509, 513, 517, 521. These records also show exam findings of pain to palpation at multiple tendon insertion points in the arms, neck, shoulders and

back. *Id.*

The Ninth Circuit has acknowledged "medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels*, 874 F.3d at 662. Fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms . . . [T]o date there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590. Further, those with fibromyalgia present with normal muscle strength. *Revels*, 874 F.3d at 656. By relying solely on inconsistencies in examination findings and assertions of lack of strength, the ALJ failed to construe the medical evidence in light of fibromyalgia's unique symptoms. Though the ALJ gave some weight to Dr. Hinz's opinion, the ALJ erred by not acknowledging Dr. Hinz's specialized knowledge of fibromyalgia and the extensive treating relationship with the Plaintiff. Accordingly, this was not a specific and legitimate reason to discount Dr. Heinz's opinion.

2) Scott Johnson, M.D.

Plaintiff argues that the ALJ failed to provide a legally sufficient bases to discount the opinion of Plaintiff's primary care physician, Dr. Johnson.

Dr. Johnson completed an insurance questionnaire in May 2015, noting that he began treating Plaintiff in January 2014. Tr. 256. Dr. Johnson stated that he had treated Plaintiff nine times in 2014 and that he had most recently examined Plaintiff a couple of days before completing the questionnaire. *Id.* Dr. Johnson noted that Plaintiff reported that he had stopped working on May 8, 2013, and that this was also his date of disability. *Id.* Citing October 2013 MRI imaging showing degenerative disc disease and ruptured C6-7 discs, and physical exam findings revealing limited range of motion and multiple trigger and tender points, Dr. Johnson stated Plaintiff's primary diagnosis was fibromyalgia syndrome with a secondary diagnosis of

PTSD. *Id.* Dr. Johnson opined that Plaintiff had psychiatric and cognitive impairments from mild autism, schizo affective disorder, and attention deficit disorder. Tr. 257.

Dr. Johnson opined the Plaintiff could sit one hour at a time for a total of three to five hours, stand two hours at a time for a total of three to five hours, and walk one to two hours at a time for a total of two hours of an eight-hour work day. Tr. 257. Plaintiff could occasionally lift up to thirty pounds, but no weight could be lifted frequently. *Id.* Dr. Johnson opined that "[t]his is a long-term condition with even the best multidisciplinary therapy producing limited mitigation of symptoms," and that Plaintiff was "[l]ikely to have long-term impairments." *Id.*

The ALJ gave limited weight to Dr. Johnson's medical opinion because Dr. Johnson opined that Plaintiff's disability started about eight months before Dr. Johnson began treating Plaintiff and Dr. Johnson had "only" seen Plaintiff nine times in sixteen months, without any significant findings in his examinations. Tr. 25. The ALJ further found Dr. Johnson's opinion that Plaintiff could not occasionally lift thirty pounds was inconsistent with an inability to frequently lift any weight. *Id.*

When weighing medical opinions, factors include the examining and treating relationship, length of treatment relationship, nature and extent of treating relationship, support of evidence, consistency with the record, and specialization of the medical professional. 20 C.F.R. § 404.1527(c). "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). An ALJ need not accept brief, conclusory, or inadequately supported finding when there are conflicting medical opinions. *Id.* (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

\\

A careful review of the records shows that, during the course of their treating relationship, Dr. Johnson reviewed Plaintiff's medical history, reviewed cervical spine MRI results dating back to 2012, referred Plaintiff to a rheumatologist and reviewed those findings, and, upon exam, found limited cervical range of motion, diffuse muscle tone, positive trigger points in the thoracic area, and multiple tender muscle and tendon locations. Tr. 372, 379, 448, 468, 484, 507. The ALJ failed to discuss why reviewing prior medical records, in combination with his own treatment relationship, would not provide legitimacy to Dr. Johnson's opinion. Moreover, the ALJ failed to explain why nine visits in sixteen months qualifies as infrequent, or why Dr. Johnson's findings were insignificant. Further, the ALJ did not provide any explanation for rejecting Dr. Johnson's opinion that Plaintiff could lift thirty pounds occasionally but could not lift any weight frequently. *Id.* Although state agency medical consultants determined Plaintiff could frequently lift ten pounds in August 2014 and February 2015, the consultants did not examine Plaintiff. Tr. 66, 82. Thus, the ALJ improperly weighed Dr. Johnson's opinion.

   3)  Craig Steinberg, Ph.D.

Plaintiff claims the ALJ failed to provide a specific and legitimate reason for giving the opinion of his treating psychologist, Dr. Steinberg, little weight.

In 2016, Dr. Steinberg stated in a letter that Plaintiff reported experiencing "depression, trauma, and anxiety, as well as chronic back and neck pain . . . to the point of not being capable of managing steady employment." Tr. 578. Dr. Steinberg had been Plaintiff's treating psychologist continuously since 2013, seeing the Plaintiff once every other week on average. *Id.*

The ALJ gave little weight to Dr. Steinberg's letter because it merely recited the Plaintiff's self-reported and subjective complaints. Tr. 24. As the Plaintiff correctly points out, psychiatric evaluations based on the patient's self-reporting may not be automatically

disregarded because "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Yet, there must be substantial evidence supporting how a claimant's symptoms translate into specific functional deficits preventing work activity. *Morgan*, 169 F.3d at 601. Here, Dr. Steinberg described treatment dating back to 2013 and concluded by recounting the Plaintiff's self-reporting of an inability to engage in steady employment. Tr. 578. Dr. Steinberg did not purport to show how the Plaintiff's symptoms translated into specific functional deficits preventing work activity. Moreover, Dr. Steinberg did not offer his own opinion regarding Plaintiff's ability to work. Thus, the ALJ did not err in giving little weight to Dr. Steinberg's letter.

> 4) Allen Pettee, M.D.

Plaintiff argues that the ALJ erred in rejecting the opinion of his neurologist, Dr. Pettee, in light of the overall record.

In May 2013, Dr. Pettee conducted repeat nerve conduction studies finding bilateral carpal tunnel syndrome and evidence of peripheral neuropathy consistent with mild sensorimotor axonal neuropathy affecting the Plaintiff's left radial sensory conduction and left peroneal motor conduction. Tr. 284-85. Due to atypical sensory symptoms, Dr. Pettee recommended further workup and psychiatric evaluation. Tr. 285. A chart note indicates Dr. Pettee also completed a family leave form, stating the Plaintiff was "temporarily disabled from all work until his diagnostic work-up is completed and his pain is better managed." *Id.*

The ALJ rejected Dr. Pettee's opinion because it was not a clear endorsement of disability as used by the Social Security Administration, and it did not identify specific functional limitations. Tr. 25.

The ALJ is responsible for determining if a claimant is disabled within the sense used by the Social Security Administration and "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Here, the doctor used the word "disabled" in the context of an FMLA form. Moreover, the doctor noted that any finding of "disability" was temporary pending additional testing. Accordingly, the ALJ could properly reject Dr. Pettee's opinion that Plaintiff was "disabled."

The ALJ also discredited Dr. Pettee's opinion that Plaintiff was disabled and unable to work because Dr. Pettee had only seen Plaintiff a few times, and Plaintiff did not follow through with planned work-ups. *Id.* Plaintiff argues that the ALJ erred by failing to weigh Dr. Pettee's opinion as a specialist and failing to consider Plaintiff's follow through with the planned workup after he moved to Oregon.[4]

The record shows that Dr. Pettee first examined Plaintiff in January 2013 for left arm pain, bilateral hand numbness, and possible neurologic causes including carpal tunnel syndrome and cervical disease. Tr. 298. However, before Dr. Pettee completed a diagnostic work-up, Plaintiff moved out-of-state. Tr. 277. Regardless, in the course of his evaluation of Plaintiff's medical conditions, Dr. Pettee did not opine about specific functional limitations. Even without considering the number of times the Plaintiff saw Dr. Pettee, and acknowledging Dr. Pettee's specialty, and the fact that Plaintiff resumed neurological evaluations after his move to Oregon, Dr. Pettee's opinion regarding Plaintiff's inability to work still failed to identify specific functional limitations and was, in essence, conclusory. The ALJ, accordingly, was not required to give special weight to an opinion on an issue reserved for the Commissioner.

\\

---

[4] Dr. Pettee was Plaintiff's physician in another state. Tr. 277.

B.  Other Source Opinion Evidence

Social Security Rule ("SSR") 06-03p, in effect at the time Plaintiff filed his claim,

defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists,

licensed optometrists, licensed podiatrists, and qualified speech pathologists. Only evidence from

an "acceptable medical source" may be considered to establish the existence of a medically

determinable impairment. SSR 06-03p at *2, 2016 WL 2329939. Healthcare providers who are

not "acceptable medical sources," such as "nurse practitioners, physician's assistants,

chiropractors, audiologists, and therapists," are considered "other sources" under the regulations,

and the ALJ can consider other medical source opinions to determine the "severity of [the

individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. §§

404.1513(d), 416.913(d); SSR 06-03p at *2.

An ALJ may not reject the competent testimony of "other" medical sources without

comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent

testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness

for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r

of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not

"discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the

ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to

those reasons when rejecting similar testimony by a different witness." *Id.* at 1114.

1)  Amber Benson, PMHNP

Plaintiff argues that ALJ erred by failing to identify germane reasons supported by

substantial evidence to reject the opinion of Ms. Benson.

In November 2017, Ms. Benson examined Plaintiff. Tr. 571-73. She noted that Plaintiff

had body odor, his mood was hypomanic with mixed states, his thought processes were relevant and goal directed, and he appeared alert and oriented. Tr. 572. Ms. Benson observed that Plaintiff's long-term memory appeared good while his short-term memory was variable due to decreased focus, and attention and concentration were poor while his judgment and insight were fair. *Id.* She opined that the Plaintiff was "unable to work due to Psychiatric and Medical Status being unstable with inability to maintain a normal workday/work week . . . Due to variability of mood unknown if behavior would be appropriate to public and co-workers on a daily basis." *Id.*

The ALJ rejected Ms. Benson's opinion because it was rendered the first day she met the Plaintiff, and the opinion failed to provide support for why the Plaintiff would be unable to maintain work activity. Tr. 24. While Ms. Benson noted some abnormalities during her exam, she failed to explain how these findings informed her conclusion. Accordingly, the ALJ provided germane reasons–the lack of an informative treating relationship and unsupported conclusions– for limiting the weight of Ms. Benson's opinion.

### 3. Lay Witness Statements

Plaintiff argues the ALJ failed to identify a germane reason supported by substantial evidence in the record to reject the lay witness testimony of his girlfriend, Ms. J.

A. Analytical Framework

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects their ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting

testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

B. Analysis

Ms. J. completed a third-party function report in June 2014. Tr. 202-09. In her report, Ms. J. stated she had known Plaintiff for nine months and saw him on a daily basis. Tr. 202. She found Plaintiff to have difficulty walking or standing for long periods of time in addition to anxiety. *Id.* Ms. J. also recalled at least four major PTSD episodes lasting about ten to fourteen days each. Tr. 209.

The ALJ found Ms. J.'s statements to be descriptive of her perceptions, but not fully consistent with medical and other evidence in the record. Tr. 23. In addition, the ALJ determined Ms. J.'s statements did not indicate an inability to sustain work activity as defined by the

Plaintiff's RFC. *Id.* The ALJ took into consideration Ms. J.'s firsthand observations and determined they may have referred to infrequent periods of increased symptomatology resolved with treatment. Tr. 22-23.

The ALJ did not explain how Ms. J.'s perceptions of the Plaintiff's limitations were inconsistent with other evidence in the record. In fact, the ALJ failed to cite to any record to discredit Ms. J.'s testimony. *See* Tr. 22-23. Further, while inconsistency with medical evidence is a reason for discrediting testimony of lay witnesses, *Bayliss*, 427 F.3d at 1218 (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001), the ALJ's reasoning for rejecting Ms. J.'s opinion fails because improvement in a plaintiff's mental health symptoms does not automatically negate testimony or provide evidence about a plaintiff's ability to work, *see Garrison*, 759 F.3d at 1017. The ALJ also failed to explain why Ms. J.'s testimony was not indicative of an inability for the Plaintiff to sustain work within his RFC. *See* Tr. 23. Thus, the weight given to Ms. J.'s observations of the Plaintiff's symptoms was not supported by germane reasons.

## REMAND

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, further proceedings do not serve a useful purpose because the record is fully developed and free from conflicts and ambiguities. No outstanding issues are required to be resolved. The Plaintiff's subjective mental health symptom testimony, Dr. Hinz's medical opinion, Dr. Johnson's medical opinion, and Ms. J.'s testimony should be credited as true. When credited as true, the improperly rejected evidence demonstrates the Plaintiff's disability under the Social Security Act.

When properly credited, Plaintiff's subjective mental health symptom testimony supports a finding that his significant, waxing and waning symptoms preclude him from sustaining work in a competitive environment.

The ALJ failed to offer specific and legitimate reasons in giving little weight to Dr. Hinz's medical opinion. When credited as true, Dr. Hinz's opinion requires a finding of disability per vocational expert testimony. The vocational expert testified regular absences from

work in excess of two per month would result in termination or great difficulty in continued employment. Tr. 533-34. Dr. Hinz reported Plaintiff would need to miss approximately three to four days of work per month. Tr. 577. Therefore, Dr. Hinz's medical opinion alone establishes that Plaintiff is disabled as defined by the Social Security Act and is entitled to benefits.

When taken as true, Dr. Johnson's opinion supports a finding of disability greater than the ALJ's determination of the Plaintiff's RFC.

Ms. J. specifically pointed to at least four PTSD episodes in nine months. Tr. 209. Each episode lasted at least ten days. *Id.* When credited as true, Ms. J.'s statements support a finding of disability based on the number of days the Plaintiff would be absent from work. *See* Tr. 533-34.

**CONCLUSION**

For the reasons set forth above, the Commissioner's final decision is REVERSED and this matter is REMANDED to the ALJ for the calculation and award of benefits.

IT IS SO ORDERED.

Dated this 9th day of April 2019.

/s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge